IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BLACKWATER DRAW DAIRY, LLC,
a New Mexico Limited Liability Company,
and PORTALES LIVESTOCK AUCTION, INC.,
a New Mexico Corporation,

    Plaintiffs,

vs.                                              No. CIV 11-0846 RB/WDS

KEITH LAMBRIGHT and
SHIPSHEWANA AUCTION, INC.,
an Indiana Corporation,

    Defendants,

KEITH LAMBRIGHT,

    Counter-Claimant and
    Third-Party Plaintiff,

vs.

PORTALES LIVESTOCK AUCTION, INC.,
A New Mexico Corporation,

    Counterclaim Defendant,

and

RANDY BOULDIN,

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 111). Jurisdiction arises under 28 U.S.C. §§ 1331 and 1332. The Court finds that this motion should be denied.

**I.     Background**

In August, 2011, Blackwater Draw Dairy, LLC (Blackwater) filed its Complaint for Breach of Contract, Unjust Enrichment, and Money Owed in state court against Keith Lambright and Shipshewana Auction, Inc. (SAI) (Defendants). According to the allegations in the Complaint, Blackwater and Defendants entered into a contract whereby Defendants arranged for transport and accepted delivery of 650 head of cattle and Defendants sold the cattle for $2,100 per head for a total of $1,365,000.

In September 2011, Defendants removed the action to this Court and filed separate answers. In August 2012, Blackwater filed its First Amended Complaint, adding Portales Livestock Auction, Inc. (PLA) as a plaintiff and asserting additional claims for violations of the Packers and Stockyards Act, 7 U.S.C. §§ 228b & 221, prima facie tort, civil conspiracy, fraud, and conversion against Lambright and SAI. The First Amended Complaint contains additional allegations that Lambright had loaned Bouldin $566,475 to purchase the 650 head of cattle and Bouldin allowed Lambright to receive the proceeds on the sale of other cattle and use other cattle as collateral. On September 7, 2012, the prima facie tort, civil conspiracy, fraud, and conversion against Defendants were dismissed by stipulation.

In September 2012, Lambright filed a Counterclaim against PLA and a Third-Party Complaint against Randy Bouldin, the owner and chief executive of PLA and principal of Blackwater, alleging that Lambright loaned $270,000 to PLA and Bouldin and he has not been repaid. The Court denied PLA's and Bouldin's motion to dismiss the Counterclaim and Third-Party Claim as untimely. Lambright has moved for summary judgment on the Counterclaim and Third-Party Complaint (hereinafter "Loan Claim"). Defendants move for summary judgment on Plaintiffs' remaining claims.

**II.   Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant."  *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting FED. R. CIV. P. 56(e) (2007 version)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

**III.   Statement of Facts**

The Court must view the facts in a light most favorable to Plaintiffs, the non-moving party.  *See Turner*, 563 F.3d at 1142.  Thus, all reasonable inferences are drawn and factual ambiguities are resolved in their favor.  Lambright bought cattle from various sellers and transported them to PLA and Blackwater, including 266 heifers that Lambright purchased in Idaho for $487,110.  (Doc. 112-1, Bouldin Dep. 101-102, 120-121, 144, 153; Doc. 119, Lambright Dep. 96, 136).  In February 2008, Lambright contributed $566,475 to purchase 415 Holstein cows through PLA.  (Lambright Dep. 49-50).  Lambright testified in his deposition that he owned 950 cows at Blackwater.  (Bouldin Dep. 144).  Bouldin claims in his brief that

3

Lambright's cattle were always kept separate from Bouldin's cattle, but the cited deposition testimony of Bouldin does not state that the cattle were always separated; rather deposition testimony on which Bouldin relies states that the 463 head of cattle that Lambright retrieved from Blackwater on Thanksgiving 2008 were segregated. (Bouldin Dep. 109).

In September 2008, Bouldin decided he wanted to sell all the cattle at Blackwater. (Bouldin Dep. 143). Lambright mentioned that Vreba-Hoff Dairy Development, LLC (Vreba-Hoff) needed to buy "a bunch of cows." (Bouldin Dep. 144). In October 2008, Bouldin and Lambright agreed to sell 650 head of cattle from Blackwater to Vreba-Hoff at $2,100 per head. (Bouldin Dep. 143- 144). Bouldin and Lambright agreed to participate in the deal together. (Bouldin Dep. 148-149). There was no written agreement between Lambright and Bouldin.

On October 3, 2008, Vreba-Hoff gave Lambright a Promissory Note in the amount of $1,365,000 for the 650 dairy cows that were at that time corralled at Blackwater. (Doc. 112-4, Lambright Affidavit). Bouldin and Lambright agreed that Lambright would take out his investment of $566,475 from the proceeds and Bouldin would receive the balance of approximately $800,000. (Bouldin Dep. at 150). Bouldin expected to receive payment for the 650 cows by the end of December 2008. (Bouldin Dep. 148).

In an affidavit, Bouldin states that he formed an agreement with Lambright to sell Lambright the 650 head of cattle and Bouldin understood that Lambright was the buyer of the cattle. (Doc. 121). Bouldin states that he knew that Lambright intended to sell the cattle to Vreba-Hoff, but Bouldin did not sell the cattle directly to Vreba-Hoff and he had no direct contact with Vreba-Hoff. (*Id*.)

**IV.  Discussion**

Plaintiffs allege that Defendants breached a contract with Plaintiffs by failing to pay for

4

the cattle as promised. Lambright contends that Bouldin's deposition testimony shows that Lambright and Bouldin owned the 650 cows and they agreed to sell the cows to Vreba-Hoff. Bouldin states in an affidavit that Bouldin agreed to sell the 650 cows to Lambright so Lambright could enter into a subsequent transaction to sell the cows to Vreba-Hoff. (Doc. 121). Lambright states in an affidavit that he never signed any writing agreeing to purchase or to pay for 650 head of cattle. (Doc. 112-4).

In order to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract. *Trujillo v. Glen Falls Ins. Co.*, 540 P.2d 209, 210-11 (N.M. 1975). While the record indicates that Bouldin and Lambright agreed to sell the 650 cows to Vreba-Hoff at $2,100 per head and split the proceeds from the sale, material facts remain in dispute. The record, construed in the light most favorable to Plaintiffs, precludes summary judgment.

**THEREFORE,**

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 111), is DENIED.

                                                                                       *[signature]*
                                                                                       _____
                                                                                       **ROBERT C. BRACK**
                                                                                       **UNITED STATES DISTRICT JUDGE**